FILED & ENTERED

APR 15 2014

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY tapia    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Debby Anspach<br><br>Debtor(s). | Case No.: 6:13-bk-14013-MW<br><br>CHAPTER 7<br><br>**MEMORANDUM DECISION AND ORDER HOLDING SAMUEL KELSALL V IN CIVIL CONTEMPT**<br><br>Date:       April, 14, 2014<br>Time:       2:00 p.m.<br>Courtroom: 6C<br>               411 West Fourth Street<br>               Santa Ana, CA 92701 |

This matter comes before the Court on the Court's Order to Show Cause (the "OSC"), filed and entered April 1, 2014, ordering Samuel Kelsall V ("Mr. Kelsall") to appear and show cause why he should not be held in contempt for violating this Court's Order *Ordering* Samuel Kelsall V to Attend His Deposition on March 31, 2014 at 10:00 a.m., filed and entered March 28, 2014 (the "Deposition Order"). The Court received sworn testimony and heard oral argument on the matter. The Court now makes its findings of fact and conclusions of law as follows:

-1-

The Court takes judicial notice of all the pleadings appearing on the docket in this case, including but not limited to all pleadings relating to discovery and all discovery-related orders.

The parties have been attempting to take Mr. Kelsall's deposition since the late summer of 2013, without success.

Creditor Rebecca Foss, through her attorney Fritz Firman, Esq. ("Mr. Firman"), issued a subpoena to Mr. Kelsall on August 23, 2013 with respect to a deposition noticed for September 6, 2013. Mr. Kelsall filed a motion to quash on September 5, 2013. The Court heard this matter October 8, 2013, with the Court denying the motion to quash.

There followed the issuance of additional subpoenas to Mr. Kelsall and additional motions to quash by Mr. Kelsall and hearings by the Court relative to these matters. As a result of these pleadings, subpoenas and hearings it has become clear to the Court that Mr. Kelsall is acting in bad faith with respect to discovery matters and that his veracity and truthfulness in making statements to the Court are very much in question. The record shows that Mr. Kelsall has attempted to evade the service of subpoenas, has lied under oath with respect to whether he received service of a subpoena and has endeavored to thwart and disrupt the discovery process by filing motions to quash subpoenas for depositions on the eve of the deposition date. Further evidence of Mr. Kelsall's bad faith and his effort to thwart the discovery process is his pattern and practice of setting a hearing date on a motion to quash two months or more after the motion is filed even though the Court's Local Bankruptcy Rules require only 21 days notice of a motion. LBR 9013-1(d)(2).

A few weeks before the October 8 hearing, on September 19, 2013, another subpoena was issued to Mr. Kelsall requiring his appearance at a deposition on October 9, 2014. On October 4, 2013, Mr. Kelsall moved to quash the subpoena, setting the hearing on the motion to quash for February 18, 2014 -- more than four months after the filing of the motion to quash.

On December 20, 2013, debtor Debby Anspach, through her attorney Holly Roark, Esq. ("Ms. Roark"), issued a subpoena to Mr. Kelsall requiring his appearance at a deposition on January 14, 2014. Mr. Kelsall responded by waiting until January 13, 2014 to file his motion to quash (the "1/13/14 Motion to Quash") and set the hearing date for the motion for May 13, 2014. (The Court notes as an aside that the mere filing of a motion to quash a subpoena does not excuse compliance with the subpoena. *King v. Fidelity National Bank of Boston*, 712 F.2d 188, 191 (5th Cir. 1983) ("The motion to set aside the subpoena was arguably technically flawed, but the greater error in the Kings' analysis is that a motion to quash must be not only made but *granted* before the scheduled deposition to excuse compliance."))

On March 10, 2014, the Court held an evidentiary hearing on the 1/13/14 Motion to Quash. The key issue before the Court was whether Mr. Kelsall had been personally served with the subpoena. Mr. Kelsall executed and filed a sworn declaration (Docket No. 150-1) in support of his motion to quash stating "I was never personally served with the deposition subpoena attached as 'Exhibit "A"'". At the hearing, Ms. Roark called Cesar Gonzalez, a registered process server with five years of experience. Mr. Gonzalez testified that he personally served the subpoena on Mr. Kelsall on December 27, 2013. Reporter's Transcript of Evidentiary Hrg. Motion Filed 1/13/14 to Quash Subpoena and for Protective Order ("R.T.") at 8-9. The Court found Mr. Gonzalez to be a credible and believable witness. Ms. Roark next called Mr. Kelsall as a witness, but he objected to being called as a witness on the ground that he was on pain medications and was in pain. R.T. at 18. The record shows, however, that only a few minutes later Mr. Kelsall made oral argument to the Court regarding Ms. Anspach's waiver of attorney- client privilege and his allegation that he was not validly served with Ms. Roark's December 20 subpoena. R.T. at 21-22.

The evidence before the Court concerning valid service of the December 20 subpoena was (1) Mr. Gonzalez's sworn testimony that he personally served Mr. Kelsall on December 27 and (2) Mr. Kelsall's sworn declaration that he "was never personally

served." Clearly, one person was telling the truth and one person was lying under oath because the statements made are totally inconsistent with one another. Taking cognizance of the fact that Mr. Gonzalez had testified and that Mr. Kelsall did not (even though he clearly had the opportunity to do so), the Court concluded that Mr. Gonzalez was speaking the truth and Mr. Kelsall was lying. On this basis, the Court denied the 1/13/14 Motion to Quash.

The next topic at the March 10 hearing was the re-setting of Mr. Kelsall's deposition. The Court asked Mr. Firman, Ms. Roark and Mr. Kelsall to agree upon an acceptable date for Mr. Kelsall's deposition. R.T. at 26-29. After consultation on the record with Mr. Kelsall and the other parties, the Court set a March 31, 2014 date for Mr. Kelsall's deposition, with the time of the deposition set for 10:00 a.m. Mr. Kelsall stated on the record that this date and time was acceptable to him. R.T. at 26, 28-29.

On March 14, 2014, Mr. Firman served Mr. Kelsall by facsimile with a notice of deposition and a request for production of documents informing Mr. Kelsall that his deposition was to be held on March 31, 2014 at 10:00 a.m. at the offices of Aptus Court Reporting in Costa Mesa, California (the "Deposition Notice"). On or shortly before March 28, 2014, Mr. Firman lodged the Deposition Order, which the Court (as mentioned earlier) filed and entered on March 28, 2014. The Deposition Order specifically required Mr. Kelsall to attend his deposition on March 31, 2014.

Mr. Kelsall was sent notice of the Deposition Order by email from the Court's CM/ECF Notice of Electronic Filing on March 28, 2014. Approximately two hours after the Court filed and entered the Deposition Order, Mr. Kelsall filed a "Notice of Motion For: to Quash Deposition Notice and for Protective Order" with respect to the Deposition Notice, setting the hearing date for June 17, 2014.

Mr. Firman testified that he received the CM/ECF Notice of the Deposition Order no later than the morning of March 29, 2014. This creates an inference, which is not rebutted, that a copy of the Deposition Order was in Mr. Kelsall's email box no later than the morning of March 29, 2014.

1   There is no dispute that Mr. Kelsall did not attend his deposition on March 31,
2   2014. The only issue is whether Mr. Kelsall received timely notice of the Deposition
3   Order. The Court issued the OSC on April 1, 2014 and set an evidentiary hearing on
4   the matter for April 14, 2014.

5   Civil contempt is characterized by the court's desire to compel obedience to a
6   court order or to compensate the contemnor's adversary for injuries which result from
7   noncompliance. *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th
8   Cir. 1983). A court's power to impose coercive civil contempt depends upon the ability
9   of the contemnor to comply with the court's coercive order. *Id.* at 778. Civil contempt
10  must be shown by clear and convincing evidence. *Id.* at n.1.

11  At the OSC hearing, Mr. Kelsall testified that he did not receive notice of the
12  Deposition Order until after March 31, 2014, but the Court does not find his testimony
13  credible. Mr. Kelsall was well aware that Mr. Firman had encountered extraordinary
14  difficulty in taking Mr. Kelsall's deposition. Mr. Kelsall knew full well that his deposition
15  had been noticed for March 31, 2014. If Mr. Kelsall was acting in good faith and had
16  been caught by surprise by the Deposition Order and learned of it only after March 31, it
17  is likely there would have been some follow up communication from Mr. Kelsall to Mr.
18  Firman regarding the missed deposition. However the record is devoid of any such
19  communication. A person acting in good faith who inadvertently fails to comply with a
20  court order for his or her deposition would normally contact the opposing counsel at the
21  earliest opportunity, express dismay at the failure to comply and, in all likelihood, supply
22  reasons for the noncompliance. The absence of any evidence in the record of such a
23  communication is in a sense, "the dog that didn't bark." Mr. Kelsall was not surprised by
24  the Deposition Order and knew of it in advance of the March 31 deposition date.

25  Further, the Court determined at the March 10 hearing that Mr. Kelsall's
26  statements under oath in his declaration that he had not been personally served with
27  Ms. Roark's subpoena were not credible, and this prior lack of veracity lends additional
28  support to the Court's conclusion that Mr. Kelsall was not telling the truth at the OSC

hearing when he testified that he did not receive notice of the Deposition Order until well after March 31.

Finally, that Mr. Kelsall's failure to comply with the Deposition Order was intentional rather than unintended or accidental can be inferred from his pattern and practice of engaging in activity intended to thwart discovery in this case, as discussed above. The intentional noncompliance with a court order is yet another instance of Mr. Kelsall's attempt to thwart discovery.

For the foregoing reasons, the Court finds there is clear and convincing evidence that Mr. Kelsall intentionally violated this Court's Deposition Order, having actually received prior notice thereof. The Court therefore holds Mr. Kelsall in civil contempt.

Mr. Kelsall will have the opportunity by the end of this week to purge himself of civil contempt by (1) attending his deposition, (2) completing his deposition, and (3) timely producing the documents required to be produced by Mr. Firman's March 14, 2014 request for production of documents, a copy of which is attached as Exhibit A to this Memorandum Decision and Order. The Court orders that such documents be delivered to Mr. Firman no later than noon on Wednesday, April 16, 2014.

Mr. Kelsall's oral deposition is set for Friday, April 18, 2014 at 9:00 a.m. in the Court's alternative dispute resolution room, adjacent to Courtroom 6C, and will continue from day to day until completed.

**IT IS SO ORDERED.**

Date: April 15, 2014

Mark S. Wallace
United States Bankruptcy Judge

Main Document    Page 7 of 10

# EXHIBIT A

As used herein, the term "DOCUMENT" shall include writings, notes, drafts, outlines, recordings and files, regardless of storage media; they include, but are not limited to, writings contained on paper, recordable tape, celluloid discs, hard drives, electronic mail servers or any other digitally stored media.

The term "DOCUMENT" shall also include the full range of writings described in Rule 1001 of the Federal Rules of Evidence.

1. All documents in your possession, custody or under your control, written or created after the date of January 1, 2011 that pertain to either directly or indirectly to the bankruptcy petition, Case No. 6:13-bk-14013MW filed in the Central District of California, Riverside Division on March 8, 2013.

2. All documents, interoffice memos, intraoffice memos, reports, chronicles, letters, correspondence, computerized letters or writings regarding the bankruptcy petition filed on behalf of Debby Anspach aka Debby Huffman, case number 6:13-bk-14013MW.

3. All documents in your possession, custody or under your control, written or created after March 7, 2013 that pertain to any communications between you and Debby Anspach regarding her bankruptcy petition, Case No. 6:13-bk-14013MW.

4. Any and all documents in your possession, custody or control written or created after the date of March 8, 2013 that pertain to either directly or indirectly to the first meeting of creditors scheduled for April 8, 2013 at 10:00 a.m. for Debby Anspach in bankruptcy case number 6:13-bk-14013MW (the Debtor's 341(a) hearing).

5. Any and all documents in your possession, custody or control written or created after the date of March 8, 2013 that pertain to either directly or indirectly the first meeting of creditors scheduled for April 30, 2013 at 10:00 a.m. (the Debtor's 341(a) hearing).

NOTICE OF DEPOSITION

03/14/2014 FRI 15:01  [TX/RX NO 8785]  ☒004

-7-

6. All documents in your possession, custody or control written or created after January 1, 2010 that pertain to either directly or indirectly to "2634 Desert Breeze Way, Ltd Business Trust"

7. All documents in your possession, custody or control written or created after January 1, 2010 that you used, either directly or indirectly to prepare the bankruptcy petition, schedules and statement of affairs for Debby Anspach in Case No. 6:13-bk-14013MW.

8. All documents in your possession, custody or control written or created after January 1, 2010 that pertain, either directly or indirectly to the sale of the real property located 31 Dartmouth, Rancho Mirage, California.

9. All documents in your possession, custody or control written or created after January 1, 2010 that pertain, either directly or indirectly, to the purchase of the real property located at 2634 Desert Breeze Way, Palm Springs, California.

10. Any and all federal and state income tax returns for the Debtor, Debby Anspach, for the tax years from January 1, 2008 to the present.

11. All documents in your possession, custody or control written or created after January 1, 2013 that pertain, either directly or indirectly, to a deed of trust on the property located at 2634 Desert Breeze Way, Palm Springs, California in favor of ML Kaiser Investment Properties, in the approximate amount of $40,000.

12. All documents in your possession, custody or control written or created after January 1, 2013 that pertain, either directly or indirectly, to a deed of trust on the property located at 2634 Desert Breeze Way, Palm Springs, California in favor of ML Kaiser Investment Properties, in the approximate amount of $60,000.

13. All documents in your possession, custody or control written or created after January 1, 2010 that pertain, either directly or indirectly, to an entity by the name of ML Kaiser Investment Properties.

14. All documents in your possession, custody or control written or created after January 1, 2010 that pertain, either directly or indirectly, to advising the Debtor,

4
NOTICE OF DEPOSITION

Debby Anspach aka Debby Huffman, of the taking of an adverse interest by Samuel Kelsall or Samuel Kelsall & Associates, a professional corporation, of an interest adverse to the Debtor/Client pursuant to California Rules of Professional Responsibility 3-300.

15. All documents in your possession, custody or control written or created after January 1, 2013 that pertain, either directly or indirectly, to any consideration given to the Debtor, Debby Anspach aka Debby Huffman, related to the deed of trust on the property in favor of 2634 Desert Breeze Way, Palm Springs, California in favor of ML Kaiser Investment Properties, in the approximate amount of $40,000.

16. All documents in your possession, custody or control written or created after January 1, 2013 that pertain, either directly or indirectly, to any consideration given to the Debtor, Debby Anspach aka Debby Huffman, related to the deed of trust on the property in favor of 2634 Desert Breeze Way, Palm Springs, California in favor of ML Kaiser Investment Properties, in the approximate amount of $60,000.

17. All documents in your possession, custody or control written or created after January 1, 2010 that pertain, either directly or indirectly, to any money paid to you and your law corporation, Samuel Kelsall & Associates, by Debby Anspach aka Debby Huffman.

18. The retainer agreement executed by the Debtor, Debby Anspach aka Debby Huffman, to retain your services or the services of your professional corporation, Samuel Kelsall & Associates, to file the bankruptcy of the Debtor, Debby Anspach aka Debby Huffman.

19. All documents in your possession, custody or control written or created after January 1, 2013 that pertain, either directly or indirectly, to the judgment debtor exam of Debby Anspach aka Debby Huffman filed in Riverside Superior Court Case No. RIC1201260 and set to take the judgment debtor exam of Debby Anspach aka Debby Huffman on March 8, 2013.

20. All documents in your possession, custody or control that pertain to the

5
NOTICE OF DEPOSITION

Proof of Claim you filed in Debby Anspach's Case in the amount of $66,169.32 filed on February 18 2014, claim no. 3.

21.  All documents in your possession, custody or control that pertain to the Proof of Claim you filed in Debby Anspach's Case in the amount of $66,169.32 filed on February 24, 2014, claim no. 4.